JOHN S. HARRIS v. J. M. FRANK, *et al.*

1. ASSIGNMENT OF JUDGMENT; *Code Substantially Complied With.* A judgment was rendered in favor of L., and against C. and H. as principals and F. and K. as sureties. Afterward, F. and K. paid the judgment, and took an assignment therefor from L., which assignment was written upon the margin of the journal of the court, at the page whereon were recorded the proceedings in said case. *Held,* That although this assignment was not a strict compliance with § 480 of the civil code, yet that it was a substantial compliance therewith, and that with or without said section, F. and K. have a right to enforce their judgment against C. and H.

2. JUDGMENT—*Right to Enforce.* Afterward, L. died, and the judgment was not revived. *Held,* That the death of L., after he had parted with all his interest in the judgment, could not affect any of the rights or interests of F. and K., but that they still have the right to enforce their judgment by execution against C. and H.

*Error from Clay District Court.*

THE plaintiff in error, *Harris,* asks for the reversal of certain orders made by the district court, at the May Term, 1882, refusing to set aside a certain execution and sheriff's sale, and confirming the same. All necessary facts are stated in the opinion.

*Harkness & Godard,* for plaintiff in error.

*Anthony & Kellogg,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: On May 11, 1877, in an action then pending in the district court of Clay county, wherein Luther

Hall, who was doing business in the name of L. Hall & Co., was plaintiff, and R. T. Carr, John S. Harris, J. M. Frank and G. Kuhnle were defendants, the plaintiff recovered a judgment against the defendants Carr and Harris as principals and Frank and Kuhnle as sureties, for the sum of $662.80. On June 22, 1877, Frank and Kuhnle paid the judgment, but did not file any formal notice of payment or of a claim to contribution or repayment, as they might have done under § 480 of the civil code; nor was any entry made by the clerk on the margin of any book called the "docket," as provided by said § 480. But at the time of such payment the following instrument, constituting a receipt and an assignment, was written upon the margin of the journal of said court, at the page whereon were recorded the proceedings in said case, to wit:

"Received, June 22, 1877, of J. M. Frank and G. Kuhnle, of these defendants, the amount of said judgment. And in consideration thereof we do hereby assign, sell, transfer and set over the said judgment, to wit, the judgment in this cause in favor of L. Hall & Company, plaintiffs, against the said R. T. Carr, J. S. Harris, J. M. Frank and G. Kuhnle, defendants, to the said Frank and Kuhnle, who paid the same as such sureties.

"Witness our hands, on the day first written. Costs paid.
L. HALL & CO."

Luther Hall died in March, 1880. The said judgment was never revived. On November 15, 1881, an execution was issued upon said judgment, at the instance of Messrs. Anthony & Kellogg, who were the attorneys of record for Frank and Kuhnle. This execution was not fully executed. On February 8, 1882, Messrs. Anthony & Kellogg, subscribing their names as "attorneys for plaintiff," filed a precipe for an *alias* execution, which was issued and levied upon certain real estate in Clay county, Kansas; which real estate, prior to November 22, 1881, had been owned by John S. Harris, and subsequent thereto by the Kansas Central railroad, to which Harris conveyed it by warranty deed. The said real estate was sold under the *alias* execution.

At the May term, 1882, of the district court of Clay county, before the confirmation of such sale, J. S. Harris made his motion to set aside and vacate such execution and sale, upon the grounds therein set forth. The motion was overruled, and Harris excepted. The court allowed the sheriff to amend his return, correcting certain irregularities therein, and, upon the motion of Frank and Kuhnle, confirmed the sale, to which Harris excepted. Harris then, as plaintiff in error, brought the case to this court, and he now asks for a reversal of the orders of the district court refusing to set aside the execution and sheriff's sale, and confirming the sheriff's sale, claiming that such orders were erroneous. The plaintiff in error, Harris, now claims that the said execution and sale were void, for two reasons:

"*First*, The judgment upon which the execution was issued was dead, by reason of the death of the plaintiff therein, (subject, however, to resurrection in the manner prescribed by the code,) and while in that state no process could issue thereon.

"*Second*, Frank and Kuhnle were not entitled to the benefit of the judgment to enforce contribution and payment. They could acquire control of it for such purpose only by following the provisions of § 480 of the code, which they did not."

We shall consider these questions in their order.

I. We do not think that the judgment was dead, as the plaintiff in error claims. It was valid and in full force and effect when it was transferred by L. Hall & Co. to the present defendants in error, Frank and Kuhnle; and the subsequent death of Hall, who had no possible interest in the judgment at the time of his death, could not destroy its force, or effect, or operation. It was still valid and operative in the hands of Hall's assignees, Frank and Kuhnle, and they still had the right to enforce it, just the same as though Hall had continued to live. Besides, what good reason could there be for reviving the judgment in the name of Hall's administrator, when the administrator could take no possible interest in the judgment? But suppose that Hall died with-

out leaving any assets to be administered upon: then for what purpose would an administrator be appointed? Would he be appointed for the mere purpose of having the judgment, then owned by Frank and Kuhnle, revived in his name, so that Frank and Kuhnle could enforce the same? Such a transaction would seem to be ridiculous and absurd. We do not think that the death of Hall after he assigned the judgment to Frank and Kuhnle could make any possible difference with respect to the rights of Frank and Kuhnle. They would still have the right to enforce the judgment, just the same as though Hall had lived.

II. Section 480, of the civil code, reads as follows:

"When property liable to an execution against several persons is sold thereon, and more than a due proportion of the judgment is laid upon the property of one of them, or one of them pays, without a sale, more than his proportion, he may compel contribution from the others; and when a judgment is against several, and is upon an obligation of one of them as security for another, and the surety pays the amount, or any part thereof, either by sale of his property or before sale, he may compel repayment from the principal; in such case the person so paying or contributing is entitled to the benefit of the judgment, to enforce contribution or repayment, if within ten days after his payment he file with the clerk of the court where the judgment was rendered notice of his payment and claim to contribution or repayment. Upon a filing of such notice the clerk shall make an entry thereof in the margin of the docket." (Comp. Laws 1879, p. 666.)

Now while Frank and Kuhnle did not comply technically with § 480 of the civil code, we think they complied substantially with it. The transfer and assignment of the judgment were entered upon the journal of the court, where the judgment and other proceedings had in the case were recorded; and this assignment, although not a notice in form, was a notice in substance, and was a notice beyond all question that Frank and Kuhnle intended to enforce their judgment. The judgment, as above stated, was rendered against Carr and Harris as *principals,* and against Frank and Kuhnle as *sureties* only.

1. Assignment of judgment; code substantially complied with.

And this assignment showed beyond all question that Frank
and Kuhnle, the sureties, intended to enforce the judgment
against Carr and Kuhnle, their principals. We think that
this assignment is in effect as good a notice as though a for-
mal notice had been filed with the clerk, and the clerk had
entered the same upon the margin of the "docket." The
failure, however, to "make an entry thereof in the margin of
the docket" was the failure of the clerk, and not the failure
of Frank and Kuhnle; and therefore they should not be held
responsible for such failure. Besides, said § 480 of the civil
code was not enacted for the purpose of giving assignees of
judgments a remedy as assignees. They have a remedy in-
dependent of such section, and could enforce their judgment
if such section had never been enacted. Said section was
really enacted for the benefit of sureties, and for the benefit
of joint judgment debtors, without reference to whether any
assignment had been made or not; and was enacted for their
benefit in cases where the judgment, or more than a proper
share thereof, has been collected from some one or more of the
sureties or joint judgment debtors; and this whether the col-
lection was by a sale of the property of some one or more of
such parties on execution, or was by a voluntary payment on
the part of some one or more of such parties. Upon any
view that we may take of this case, we think that
Frank and Kuhnle have an unquestionable right
to enforce the judgment as against Carr and Har-
ris. Harris, however, is the only party complaining in this
court.

2. Judgment—
right to en-
force.

We have now considered all the questions presented by
counsel for plaintiff in error to this court, and upon each
of these questions we think the decision of the court below
was correct; that is, we think that there was no necessity for
any revivor of the judgment in the name of the legal represent-
atives of Luther Hall, deceased, or otherwise. And we think
that the sureties, Frank and Kuhnle, after obtaining an as-
signment of the judgment from the owner thereof, had a right
to enforce the same, although they may not have literally,

technically and formally complied with all the provisions of § 480 of the civil code. Their rights are founded upon an aggregation of suretyship, payment, subrogation, assignment, and a substantial compliance with the statute.

The judgment of the court below will be affirmed.

All the Justices concurring.